UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-13078-RGS

MARC E. BROWN, SR.

v.

FORENSIC HEALTH SERVICES, INC., ET AL.,

MEMORANDUM AND ORDER
December 23, 2013

STEARNS, D.J.

BACKGROUND

On November 20, 2013, plaintiff Marc E. Brown, Sr. ("Brown"), a prisoner in custody at the Massachusetts Treatment Center ("MTC") in Bridgewater, Massachusetts, filed this self-prepared civil rights action pursuant to 42 U.S.C. § 1983 against a number of MTC defendants, including: (1) Forensic Health Services, Inc. ("FHS"), a subsidiary of Mental Health Management Service; (2) Kim Lyman, MS LMHC, Clinical Director; (3) Jessica Williamson, MS Unit Director Coordinator; (4) Kaitlyn Peretti, PSY.D., Supervision Psychologist; (5) Brooke Peltzman, PSY.D., Director of Assessment and Treatment; (6) Malee Prete, LICSW, Treatment Review Panel; (7) Angela Orlandi, MA, Treatment Review Panel; (8) Tiana Bennett, Deputy Superintendent for Classification and Treatment; (9) the MTC; and (10) the Massachusetts Department of Correction ("DOC").[1] The individual defendants are sued both in their official and their personal capacities.

Brown alleges that FHS has denied him access to work and vocational programs based upon his race. As a result, he has been denied a state-created right to earn good time credit that could be

---

[1] Brown also asserts supplemental jurisdiction over his state law claims. In the "Claims for Relief" section of the complaint, Brown alleges the defendants also have violated 42 U.S.C. §§1981,1982, 1985 and 1986.

used to reduce his incarcerative sentence. He claims that he is entitled to receive a maximum of 10 good time credits from his state sentence for each month he has participated in the Sexual Offender Treatment Program ("SOTP"), but the defendants are denying him such credit as a result of arbitrary, unjustified and punitive reasons to terminate him.

Additionally, Brown alleges that he has been retaliated against for filing grievances and complaints against FHS and DOC staff, in violation of his First Amendment rights. Further, Brown claims that on October 17, 2013, FHS, through its employees (defendants Jessica Williamson and Kaitlyn Peretti)[2] terminated him from the SOTP for alleged negative behaviors and treatment refusal. Brown claims this termination was without due process.[3] Thus, he claims that FHS and DOC administrators have denied him the right to rehabilitate himself and to participate in vocational educational programs, in violation of his equal protection rights. Specifically, he contends that the DOC permits white and Hispanic industry workers (in the silk screen division) to forego full participation in the SOTP, but there are no African Americans working at the MTC's industries.

Next, Brown claims that he was denied permission to change the date and time of his Primary Group Treatment ("PGT"), which was necessary to avoid conflicts with his computer class

---

[2] Much of the complaint focuses on the antagonistic relationship between Brown and Jessica Williamson.

[3] He also claims defendant Jessica Williamson had him removed from the SOTP program on October 18, 2013 and placed in a different housing unit based on his non-compliance. Brown alleges that she did not permit him to appeal her decision to terminate him from the SOTP and became hostile toward him. He further claims she omitted relevant information about his treatment in her Group Progress Notes and failed to consider cultural differences concerning the use of certain phrases. Brown filed an institutional appeal alleging racial discrimination. He also filed a formal written request for a Primary Group change to Defendant Williamson, with copies to defendants Tiana Bennett, Kim Lyman, Kaitlyn Peretti (nee McDonald), as well as DOC Commissioner Luis Spencer and MTC Superintendent Michael Corsini.

and tutoring job; however, white inmates in the industries program were allowed to change groups and avoid conflict with their paying jobs for the DOC.[4]

With respect to defendant Tiana Bennett, Brown claims that she was well aware of the problems he was having with group therapy conflicting with his studies, because she was a defendant in a class action in the Suffolk Superior Court involving claims that DOC industry workers were not attending the SOTP but were still getting full earned good time credit while other inmates within the same SOTP were not. Brown contends that, with deliberate indifference, she allowed FHS defendants to retaliate against him by terminating him from the SOTP. Similarly, with respect to defendant Kim Lyman, Brown alleges that she also was part of the class action as a defendant and she was punishing him for filing grievances and a complaint against them on the grounds that their actions favored whites over African Americans.

With respect to defendants Brooke Peltzman, Angela Orlandi and Malee Prete, Brown alleges that he was interviewed by them in the presence of defendant Williamson. He claims they all had the power to make both his requested change to the GP and his request to continue in the SOTP in order to continue his educational programs and prepare for his upcoming release.[5]

Brown alleges that the actions of all of the defendants have caused him emotional stress because he fears that, in retaliation, they will petition the Massachusetts courts for a civil commitment hearing to determine Brown to be a Sexually Dangerous Person. Brown claims the

---

[4]Brown points to two similar situations involving white co-inmates, noting that they were allowed to change their PGT schedule in order to become industries workers, while he was not.

[5]Brown claims that he was told that, per order of defendant Tiana Bennett, he could not get a unit job in any housing unit as long as he was not in the SOTP. In other words, Brown lost his job eligibility with the DOC outside of the treatment unit.

defendants also want to make an example of him to other MTC inmates.

As relief, Brown seeks an injunction directing that: (1) he be reinstated to the SOTP at the same stage he as was when he was terminated; (2) the defendant (unspecified) must change or place him within a PGT to allow him to participate in education and treatment therapy; (3) he and other inmates have an avenue to appeal SOTP terminations; and (4) defendants refrain from retaliating against him.  Further, Brown seeks declaratory relief and compensatory and punitive damages.

Along with the complaint, Brown filed a Motion to Appoint Counsel (Docket No. 2) and a Motion for Leave to Proceed *in forma pauperis* (Docket No. 3).

DISCUSSION

    I.    Motion for Leave to Proceed *In Forma Pauperis*

Upon review of Brown's financial disclosures in his *in forma pauperis* motion and his prison account statement, this court will ALLOW his Motion for Leave to Proceed *in forma pauperis* (Docket No. 3).  Nevertheless, because Brown is a prisoner as defined by 28 U.S.C. § 1915(h), he is obligated to make payments toward the filing fee pursuant to 28 U.S.C. § 1915(b).

In light of this, it is hereby Ordered that:

    A.    Plaintiff is assessed an initial partial filing fee of $.52 pursuant to 28 U.S.C. § 1915(b)(1)(B);[6] and

    B.    The remainder of the fee, $349.48, is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

---

[6]This assessment was based on a manual calculation of 20% of the average daily balance for the six-month period reflected in Brown's Inmate Transaction Report and is made without prejudice to seeking reconsideration provided Brown submits an alternative calculation based on credible evidence in accordance with 28 U.S.C. § 1915(b).  This assessment also is made notwithstanding that Brown presently may not have sufficient funds to pay the initial partial assessment; the *in forma pauperis* statute provides for assessment at the time of filing of the action, but collection only "when funds exist."  28 U.S.C. § 1915(b)(1).

This assessment is made apart from any other assessments made in other civil actions filed by Brown. For purposes of clarification for crediting any funds received and to facilitate proper record-keeping by the Treasurer's Office at the MTC and by the District Court Clerk's Office Accounting Department, this court intends that any funds received from Brown's prison account first be applied to any prior Order of a court assessing a filing fee pursuant to 28 U.S.C. § 1915.[7]

### II. The Complaint is Subject to Screening

Brown's complaint is subject to the provisions of the Prison Litigation Reform Act 1995 ("PLRA"), Title VIII of Pub. L. 104-134, 110 Stat. 1321-1375 (1996). The PLRA contains provisions which grant courts the authority to screen and dismiss prisoner complaints. *See* 28 U.S.C. § 1915 (proceedings *in forma pauperis*);[8] 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).[9] In conducting a preliminary review, the court liberally

---

[7]In other words, Brown's filing fee obligation in this action shall be collected consecutively and not simultaneously with any prior filing fee obligation imposed by any court. *See Ruston v. NBC Television*, USCA No. 06-4672-cv (2d Cir. 2009) *citing Whitfield v. Scully*, 241 F.3d 264, 277 (2d Cir. 2001). *See also Lafauci v. Cunningham*, 139 F. Supp. 2d 144, 147 (D. Mass. 2001) (reviewing decisions of the courts of appeals for the Second, Seventh, and District of Columbia circuits, and indicating that "the simultaneous collection of filing fees from indigent prisoners may raise serious constitutional concerns").

[8]Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §1915(e)(2). *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. *Id.; Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

[9]Section 1915A of Title 28 authorizes courts to review prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if it lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

construes the complaint because Brown is proceeding *pro se*. *See Hughes v. Rowe,* 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto de Educacion Universal Corp. v. U.S. Dept. of Education*, 209 F.3d 18, 23 (1st Cir. 2000). Even under a broad reading, however, this action is subject to dismissal for the reasons set forth below.

   III. <u>Failure to Comply With Fed. R. Civ. P. 8 to State Plausible Claims</u>

   Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). The statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Phelps v. Local 0222*, No. 09-11218, 2010 WL 3342031, at *5 (D. Mass. 2010) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (quotations and citations omitted)). In addition, the pleading "must afford the defendants a meaningful opportunity to mount a defense." *Benyamin v. Commonwealth Med. UMass Med. Ctr., Inc.*, 2011 WL 2681195, at *2, (D. Mass. 2011) (quoting *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 123 (1st Cir. 2004) (internal punctuation and additional citations omitted)). At a minimum, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." *Id.* (quotation omitted). While the "First Circuit holds a pro se litigant to a standard of pleading less stringent than that for lawyers," "this cannot be taken to mean that pro se complaints are held to no standard at all." *Green v. Massachusetts*, 108 F.R.D. 217, 218 (D. Mass. 1985). Thus, "the requirements of Rule 8(a)(2) are minimal – but minimal requirements are not tantamount to nonexistent requirements." *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) (internal quotation omitted).

   Further, under Rule 8, a plaintiff must plead more than a mere allegation that the

6

defendant(s) has harmed him [or her]. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (detailed factual allegations are not required under Rule 8, but a complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *See Chiang v. Skeirik*, 582 F.3d 238, 244 (1st Cir. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal citation and quotation marks omitted).

Here, Brown's complaint is unorganized, repetitive and replete with legal conclusions. He asserts his claims against the defendants jointly and fails to set forth his claims against each defendant separately so that it is virtually impossible to discern which defendant is liable for what alleged wrongdoing and what legal cause of action is being asserted against each. Brown's complaint simply sets forth a chronology of events and alleges wrongdoings by some of the defendants; however, he does not specify underlying facts of wrongdoing by defendants such as Angela Orlandi, MA, FHS and the DOC nor does he set forth with any clarity the legal basis for relief against them. Further, as noted above, in his "Claims for Relief" section at the end of the complaint, Brown alleges the defendants also have violated 42 U.S.C. §§1981, 1982, 1985 and 1986, as well as state law claims. He merely references those statutes without setting forth the "who, what, where, when and why" information as to each of these causes of action.

In short, by pleading in the manner he has -- collectively asserting his claims against the defendants -- Brown has failed to meet the Rule 8 pleading requirements. *See Bagheri v. Galligan*, 160 Fed. Appx. 4, 5, 2005 WL 3536555, *1 (1st Cir. 2005) (unpublished decision, finding complaint deficient because, *inter alia*, it failed to state clearly which defendant or defendants committed each of the alleged wrongful acts; "[the district court's requirement of an amended complaint] to remedy

7

this deficiency did not demand more than the minimum necessary to satisfy notice pleading standards."). *See also Atuahene v. City of Hartford*, 10 Fed. Appx. 33, *34, 2001 WL 604902, *1 (2d Cir. 2001) (unpublished decision, stating "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard....") .

Moreover, "[d]istrict courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments." *Terrance v. Cuyahoga County*, 2005 WL 2491531 at *1 (N.D. Ohio 2005) *citing Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). *See McDonald v. Hall*, 610 F.2d 16 (1st Cir. 1979) (court is not required to "conjure up unpled allegations," notwithstanding duty to be less stringent with *pro se* complaints). Such an exercise by this court would "'require ... [the court] to explore exhaustively all potential claims of a pro se plaintiff, ... [and] would ... transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Terrance*, 2005 WL 2491531, at *1, *quoting Beaudett*, 775 F.2d at 1278. *See also Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("It is certainly reasonable to ask that all plaintiffs, even pro se plaintiffs,.... alert party defendants that they may be individually responsible in damages. The trial and appellate courts should not have to guess at the nature of the claim asserted."). "[T]he failure to identify a particular legal theory ... places an unfair burden on the defendant to speculate on the potential claims that plaintiff may be raising against it and the defenses it might assert in response to each of these possible causes of action." *Terrance*, 2005 WL 2491531, at *1.

It would be unfair to the defendants to have to peruse the complaint and attempt to cull out

8

each legal claim in order to file a response.  Such monumental efforts are not contemplated by the Federal Rules of Civil Procedure; rather, notwithstanding Brown is *pro se*, the onus is on him to submit a complaint that sets forth, in an organized fashion, the causes of action he seeks to assert against each defendant.

Accordingly, the complaint is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Concomitant with the Rule 8 pleading deficiencies, other legal impediments are presented by the complaint.

IV.     Lack of *Respondeat Superior* Liability

As noted above, the basis for liability of FHS and the DOC is unclear.   To the extent that Brown asserts liability under 42 U.S.C. § 1983 against these defendants based on their supervisory authority and/or the fact that they employed the defendants, Brown's claims are not cognizable because *respondeat superior* is not a viable theory of liability under § 1983.  "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983.  *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 156 (1st Cir. 2006) (quoting *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005)).   In civil rights actions, "supervisors are not automatically liable for the misconduct of those under their command.  A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization."  *Id.* at 156 (quoting *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000)).  *See Pinto v. Nettleship*, 737 F.2d 130, 132 (1st Cir. 1984) (liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights).

V.     Sovereign Immunity of the DOC

To the extent that Brown seeks monetary damages against the DOC (or other state agency), his claims are barred by sovereign immunity. "The Eleventh Amendment bars actions in federal courts claiming damages against a state and its agencies unless the state has consented to be sued in federal court." *Boulais v. Commonwealth of Mass.*, 2002 WL 225936 at *1 (D. Mass. 2002) (citations omitted). *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it,... a State cannot be sued directly in its own name regardless of the relief sought."); *Alabama v. Pugh*, 438 U.S. 781 (1978) (*per curiam*) (11th Amendment generally is recognized as a bar to suits against a State, its departments, and agencies unless the State has consented to suit); *cf. Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (neither state nor its officials are "persons" for purposes of § 1983); *Quern v. Jordan*, 440 U.S. 332, 344 (1979) (Congress did not override state's Eleventh Amendment immunity in enacting §1983); *Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir. 2002) ("[T]here has been no unequivocal abrogation of the Commonwealth's 11th Amendment immunity").

Notwithstanding Brown's use of words such as "accommodation" or "discrimination," nothing in his allegations reasonably could be construed as presenting claims as to which the Commonwealth of Massachusetts has waived its sovereign immunity to suit in federal court.

VI.    Failure to State Plausible Failure to Intervene Claims

Brown appears to allege that some of the defendants are liable for failing to correct the harm done to him by his SOTP termination and the refusal to change his schedule. He does not, however, set forth sufficient underlying factual information to state failure to intervene claims ( a cause of

action based on direct liability).

Section 1983 claims based on the failure to intervene turn on whether the defendants' actions were reckless or callously indifferent to plaintiff's civil rights.  The United States Court of Appeals for the First Circuit has stated that "... a supervisor cannot be held liable for merely negligent acts. Rather, a supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others."  *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 92 (1st Cir. 1994) (citing *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989) and *Bordanaro v. McLeod*, 871 F.2d 1151, 1163 (1st Cir. 1989), *cert. denied* 493 U.S. 820 (1989)).

The test for determining what constitutes reckless or callous indifference is whether it would be apparent to a reasonable supervisor that his conduct was "very likely to violate an individual's constitutional rights."  *Reid v. Brodeur*, 2001 WL 274843 at *4 (D.N.H. 2001) *quoting Germany v. Vance*, 868 F.2d 9, 18 (1st Cir 1989).  "In addition, there must be an 'affirmative link' between a subordinate's misconduct and the supervisory official's action or inaction."  *Reid*, 2001 WL 274843 at *4 *citing Febus-Rodriguez*, 14 F.3d at 92.  "Other factors that assist in determining liability are: (1) whether the supervisor had knowledge of the alleged violations; and (2) whether the supervisor's actions or inactions could be viewed as 'supervisory encouragement, condonation, or acquiescence.'"  *Reid*, 2001 WL 274843 at *4 *quoting Lipsett v. Blanco*, 864 F.2d 881, 902 (1st Cir. 1988).

Although Brown makes bald allegations that the defendants Lyman, Bennett, and Lyman wrongfully supported the decision of defendant Williamson regarding his SOTP termination and that they were aware of Brown's disputes over this, there is insufficient factual development in the complaint for a reasonable inference that these defendants' inactions constituted encouragement,

condonation, or acquiescence in a constitutional violation.

      VII.    Order to File an Amended Complaint

In light of the above, this action be dismissed within forty-two (42) days from the date of this Memorandum and Order unless Brown files an "amended complaint" that comports with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Any amended complaint must set forth a brief statement of the underlying facts to support each claim (*i.e.*, the "who, what, when, where, and why information"). Failure to comply with these directives may result in a dismissal of this action.

In order to facilitate Brown's compliance, this court suggests, but does not Order, that he submit a chart setting forth his claims, using the following template:

| **NAME OF DEFENDANT** (specify if sued in individual and/or official capacity) | **LEGAL THEORY OF LIABILITY** (*e.g.* § 1983, § 1985) | **DATE OF THE ALLEGED ACTION** | **PLACE OF ALLEGED ACTION** | **BRIEF DESCRIPTION OF UNDERLYING FACTS IN SUPPORT** (one or two sentences if possible) |
|---|---|---|---|---|
|  |  |  |  |  |

      VIII.    The Motion for Appointment of Appoint *Pro Bono* Counsel

Under 28 U.S.C. § 1915, a "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The United States Court of Appeals for the First Circuit provides the following set of factors to consider when determining whether to appoint counsel to an indigent under § 1915: "[1] the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim; [2] the complexity of the factual and legal issues involved; and [3] the capability of the indigent litigant to present the case." *Cookish v. Cunningham*, 787 F.2d 1, 3 (1st Cir. 1986) (*per curiam*). Ultimately, to be eligible for this assistance under 28 U.S.C. § 1915,

Brown "must demonstrate that [he is] indigent and that exceptional circumstances [are] present such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." *DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991). This court considers the total situation, including the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself. *Id.* In view of the legal impediments set forth above, this court cannot find that exceptional circumstances exist that warrant the expenditure of scarce *pro bono* resources.

Accordingly, Brown's Motion to Appoint Counsel (Docket No. 2) will be <u>DENIED</u>.

<u>CONCLUSION</u>

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 3) is <u>ALLOWED</u> and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2. Plaintiff's Motion for Appointment of Counsel (Docket No. 2) is <u>DENIED</u>; and

3. Within 42 days of the date of this Memorandum and Order, plaintiff shall file an amended complaint against the defendants pursuant to Rule 8 of the Federal Rules of Civil Procedure.

SO ORDERED.

/s/ Richard G. Stearns
RICHARD G. STEARNS
UNITED STATES DISTRICT JUDGE